J-S49032-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: L.V., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: V.M.B. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 711 MDA 2018 |

Appeal from the Decree March 26, 2018
in the Court of Common Pleas of Berks County Orphans' Court at No(s):
85840

BEFORE:   SHOGAN, J., STABILE, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.:              **FILED SEPTEMBER 18, 2018**

Appellant, V.M.B. ("Mother"), files this appeal from the decree dated

March 26, 2018,[1] in the Berks County Court of Common Pleas, granting the

_____

* Former Justice specially assigned to the Superior Court.

[1] The subject decree was dated and filed March 26, 2018.  However, while the copy of the decree in the certified record indicates that copies were sent on March 27, 2018, there is no notation on the docket that notice was given and that the order was entered for purposes of Pa.R.C.P. 236(b).  The only notation on the docket is "Decree Entered terminating all parental rights to said minor child."  Our appellate rules designate the date of entry of an order as "the day on which the clerk makes the notation in the docket that notice of entry of the order has been given as required by Pa.R.C.P. 236(b)."  Pa.R.A.P. 108(b).  Further, our Supreme Court has held that "an order is not appealable until it is entered on the docket with the required notation that appropriate notice has been given."  ***Frazier v. City of Philadelphia***, 557 Pa. 618, 621, 735 A.2d 113, 115 (1999).  Thus, the order was not entered and the appeal period not triggered.  While we consider the matter on the merits, we caution the Register of Wills & Clerk of Orphans' Court of Berks County as to compliance with the rules with regard to the entry of orders.

petition of Berks County Children and Youth Services ("BCCYS") and involuntarily terminating her parental rights to her minor, dependent daughter, L.V. ("Child"), born in May 2014, pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b).[2]  After review, we vacate the decree without prejudice and remand this case for further proceedings consistent with this memorandum.

BCCYS became involved with regard to Child in July 2014 due to a report of "concerns about [Mother]'s care of Child[,] including her anger and frustration with parenting [Child]."  Notes of Testimony ("N.T."), 3/26/18, at 17; *see also* Exhibit 5.[3]  As a result, services and monitoring were initiated. *Id.*  Due to continuing concerns, on January 26, 2015, BCCYS filed a dependency petition. *Id.* at 19; *see also* Exhibit 5.  Specifically, BCCYS noted issues as to "Mother's inappropriate parenting, lack of stable housing, domestic violence issues and mental health issues."  Exhibit 5 at 7, ¶20.  On February 18, 2015, Child was adjudicated dependent but remained in the custody of Mother.  *See* Exhibit 6.  Thereafter, on April 20, 2015, BCCYS was granted emergency protective custody of Child.  *See* Exhibit 9, at 1.  BCCYS

---

[2] By separate decree, dated April 23, 2018, the trial court involuntarily terminated the parental rights of Child's father, Lo.V. ("Father").  Father has not filed an appeal and is not a party to the instant appeal.

[3] The family had been known to BCCYS since 2012 as a result of concerns related to parenting, housing, and domestic violence.  *See* Exhibit 5 at 5, ¶1.

expressed "ongoing concern due to Mother's lack of cooperation with services, lack of supervision of Child, unstable housing and mental health issues." *See* Exhibit 9, at 2, ¶3. Notably, Mother was unable to continue residing with Child, with her friend, C.L., and obtained inappropriate housing.[4] N.T. at 20-21; *see also* Exhibit 9 at 2, ¶1. The court entered a shelter care order on April 27, 2015, after a hearing before and the recommendation of a master on April 22, 2015. Pursuant to order dated May 6, 2015, Child was fully committed to BCCYS. *See* Exhibit 13.

Subsequent to a motion to modify placement, on February 23, 2017, physical and legal custody of Child were transferred back to Mother. *See* Exhibit 18. However, on May 19, 2017, after the caseworker arrived at the home and heard Mother yell at Child, which continued, and observed Mother yank Child's security blanket away, BCCYS again sought, and was granted, emergency protective custody of Child. *See* Exhibit 19; *see also* N.T. at 28-29. Child has remained in care since. N.T. at 15.

DHS filed a petition to involuntarily terminate Mother's parental rights on December 6, 2017. The trial court held a hearing on March 26, 2018. In

---

[4] Specifically, one of the individuals with whom Mother resided was a perpetrator of sexual abuse. N.T. at 21; *see also* Exhibit 9 at 2, ¶1. Further, attempts to secure housing services and/or support through Opportunity House and Berks Counseling Center were unsuccessful. As testified by Ms. Ganter, as Mother "had been problematic in both of those programs in the past, neither of them would consider [taking] her back. Berks Counseling Center housing indicated that she had previously damaged property and was not able to return and Opportunity House indicated that she had been a behavioral problem in their facility previously." N.T. at 20-21.

support thereof, BCCYS presented the testimony of Marsha Ganter, BCCYS Permanency Adoption and Foster Care Supervisor, who supervised the case until November 2017, N.T. at 17; and Kimberly Reinert, Commonwealth Clinical Group, who began treating Mother in October 2017 related to domestic violence and anger management, and was qualified as an expert in the area of mental health and domestic violence treatment, *id.* at 52-54. BCCYS further offered Exhibits 1 through 70, which were marked and admitted without objection. *Id.* at 9-14, 51-52. Mother, who was present and represented by counsel, testified on her own behalf. She additionally presented the testimony of C.L., a friend and purported source of support; and Trista Putt, licensed professional therapist, Pennsylvania Counseling Services. Child was represented by a guardian *ad litem* during this proceeding.[5]

By decree dated March 26, 2018, the trial court involuntarily terminated the parental rights of Mother to Child pursuant to 23 Pa.C.S.A. § 2511(a)(1),

_____

[5] Notably, counsel was appointed pursuant to order dated December 26, 2017 in anticipation of the March 26, 2018 termination hearing. *See* Preliminary Order, 12/26/17. We observe that counsel was appointed "to act as Guardian Ad Litem for [Child], pursuant to the provisions of the Adoption Act of Pennsylvania, [23 Pa.C.S.A. § 2101, *et seq.*]" *Id.* While Molly Sanders, Esquire, or J. Kathleen Marcus, Esquire, were specifically appointed, for reasons unclear from the record, Melissa Krishock, Esquire, appeared at the hearing. At the hearing, Attorney Krishock argued in support of termination. N.T. at 125. She further submitted a brief to this Court in support of this position.

(2), (5), (8), and (b).[6] On April 23, 2018, Mother, through appointed counsel, filed a timely notice of appeal, as well as a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

On appeal, Mother raises the following issues for our review:

A. Whether the honorable court erred as a matter of law by terminating Appellant's parental rights as to her child?

B. Whether the evidence presented by Petitioner was insufficient as a matter of law to support the honorable court's decision to terminate Appellant's parental rights in that the allegations raised by Berks County Children and Youth Services cannot as a matter of law be sufficient grounds to terminate parental rights?

C. Whether the honorable court erred in and abused its discretion in terminating Appellant's parental rights where Appellant has taken sufficient steps to remediate the issues that led to the placement of the child?

D. Whether the honorable court erred as a matter of law in terminating Appellant's parental rights based on the length of time the child had been in [care] where there were compelling reasons not to terminate her rights especially in light of the steps taken to remediate the issues that led to the initial placement and the fact that reasonable steps were not taken to avoid the minor child's return to care?

Mother's Brief at 4 (unnecessary capitalization omitted).

---

[6] This decree memorialized the decision placed by the court on the record at the hearing wherein the court stated, ". . .[M]om has not gotten to the point where she can do this. And it's been 30-some months. By the statute I believe I have to enter the decrees. I will do so. . . ." N.T. at 126.

In matters involving involuntary termination of parental rights, our standard of review is as follows:

> The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re Adoption of S.P.*, [616 Pa. 309, 325, 47 A.3d 817, 826 (2012)]. "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id.* "[A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id.* The trial court's decision, however, should not be reversed merely because the record would support a different result. *Id.* at [325-26, 47 A.3d at] 827. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. *See In re R.J.T.*, [608 Pa. 9, 26-27, 9 A.3d 1179, 1190 (2010)].

*In re T.S.M.*, 620 Pa. 602, 628, 71 A.3d 251, 267 (2013). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G. & J.G.*, 855 A.2d 68, 73-74 (Pa.Super. 2004) (citation omitted). "[I]f competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.,* 835 A.2d 387, 394 (Pa.Super. 2003) (citation omitted).

The termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, and requires a bifurcated analysis of the grounds for termination followed by the needs and welfare of the child.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing

evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted). We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*) (quoting *Matter of Adoption of Charles E.D.M., II*, 550 Pa. 595, 601, 708 A.2d 88, 91 (1998)).

However, prior to addressing the merits of Mother's appeal, we must first address Child's statutory right to counsel. This Court has recently held that we will address *sua sponte* the failure of an orphans' court to appoint counsel pursuant to 23 Pa.C.S.A. § 2313(a).[7] *See In re K.J.H.*, 180 A.3d

---

[7] Section 2313 provides, in relevant part:

§ 2313. Representation.

**(a) Child.--**The court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents. The court may appoint counsel or a guardian ad litem to represent any child who has not reached the age of 18 years and is subject to any other proceeding under this part whenever it is in the best interests of the child. No attorney

411, 413 (Pa.Super. 2018). Our Supreme Court, in *In re Adoption of L.B.M.*, \_ Pa. \_, 161 A.3d 172, 180 (2017) (plurality), held that Section 2313(a) requires that counsel be appointed to represent the legal interests of any child involved in a contested involuntary termination proceeding. The court defined a child's legal interests as synonymous with his or her preferred outcome and distinct from a child's best interests, which must be determined by a court. *Id.* at 174. Since *L.B.M.*, this Court has clarified the requirements counsel must meet in order to provide adequate representation in termination matters. *See In re Adoption of T.M.L.M.*, 184 A.3d 585, 587-91 (Pa.Super. 2018). With respect to this Court's holding in *In re K.M.*, 53 A.3d 781 (Pa.Super. 2012), that a guardian *ad litem* who is an attorney may act as counsel pursuant to Section 2313(a) so long as the dual roles do not create a conflict between the child's best interest and legal interest, the *L.B.M.* Court did not overrule it. *Id.* at 183-93.

In *T.M.L.M.*, which involved a child who was just under six years old at the time of the hearings to terminate his mother's parental rights, the child's attorney did not attempt to interview him, nor did she set forth his preferred outcome on the record. 184 A.3d at 589-90. The attorney advocated solely for the child's best interests during the hearings, rather than his legal

_____

> or law firm shall represent both the child and the adopting parent or parents.
>
> . . .

interests. *Id.* at 590. Additionally, the attorney did not file a brief on appeal, nor did she join a brief filed by another party. *Id.* Our Court concluded that the child had been deprived of his statutory right to counsel, stating:

> At the time of the hearings, Child was just shy of six years old. While Child may not have been old enough to participate actively in [the attorney's] representation of him, it is not unlikely that Child has feelings one way or another about his mother and his permanency. Like adult clients, effective representation of a child requires, at a bare minimum, attempting to ascertain the client's position and advocating in a manner designed to effectuate that position. It may be that Child's preferred outcome in this case is synonymous with his best interests. It may be that Child wants no contact with Mother. Child may be unable to articulate a clear position or have mixed feelings about the matter. Furthermore, termination of Mother's rights may still be appropriate even if Child prefers a different outcome. However, . . . it is clear that where a court appoints an attorney ostensibly as counsel, but the attorney never attempts to ascertain the client's position directly and advocates solely for the child's best interests, the child has been deprived impermissibly of his statutory right to counsel serving his legal interests.

*Id.* Accordingly, we vacated the order terminating the mother's parental rights and remanded for appointment of legal counsel. *Id.* at 591.

Instantly, the court appointed and Child was represented by a guardian *ad litem*, Attorney Krishock, who participated in the termination proceeding. However, we observe that nowhere is there any indication that Attorney Krishock is representing Child's legal interests and/or serving in a dual role representing Child's best interests and legal interests, which do not conflict.

Further, while Attorney Krishock participated in the examination of witnesses, she did not indicate Child's legal preference at the hearing and there is nothing in the record to demonstrate that she interviewed and/or

attempted to interview Child, who was almost four years old at the time of the hearing, to ascertain Child's preferred outcome.[8] Likewise, Attorney Krishock failed to present Child's legal preference in her brief to this Court, instead presenting argument related to Child's best interests. Lastly, there is nothing in the record that clearly indicates Child's preference. The BCCYS Permanency Adoption and Foster Care Supervisor, Marsha Ganter, testified that the visits between Mother and Child went "without incident" and that Child was excited to see Mother. N.T. at 36. Despite indicating a potential benefit if a relationship were sustained post-adoption, she testified that it would not be detrimental to Child to terminate Mother's parental rights. *Id.* at 41-42.

Accordingly, we are constrained to vacate the decree in this matter, and remand for further proceedings. *See T.M.L.M.*, 184 A.3d at 587-91; *see also In re Adoption of M.D.Q.*, _ A.3d _, 2018 WL 3322744 (Pa.Super. filed July 6, 2018) (vacating and remanding where the record does not indicate that counsel attempted to ascertain the children's preferences and the record does not reflect the children's legal interests); *see also In re Adoption of D.M.C.*, _ A.3d _, 2018 WL 3341686 (Pa.Super. filed July 9, 2018) (vacating and remanding where the record was unclear in what capacity attorney had been appointed to represent children and whether attorney had ascertained children's legal interests prior to hearing).

---

[8] There is nothing in the record suggesting Child is not communicative.

On remand, the orphans' court shall appoint separate legal-interests counsel for Child. Such counsel must attempt to ascertain Child's preferred outcome as to Mother by directly interviewing Child, following her direction to the extent possible, and advocating in a manner that comports with Child's legal interests. Counsel should discern from Child whether she prefers adoption by her foster parents if the adoptive family does not support continued contact with Mother. If Child is unable to express clearly her position as to Mother or direct counsel's representation to any extent, counsel shall notify the orphans' court.

Once a preferred outcome is identified, counsel shall notify the orphans' court whether termination of Mother's parental rights is consistent with Child's legal interests. If Child's preferred outcome is consistent with the result of the prior termination proceedings, the orphans' court shall re-enter its March 26, 2018 decree as to Mother. If the preferred outcome is in conflict with the prior proceeding, the orphans' court shall conduct a new termination hearing as to Mother only to provide Child's legal counsel an opportunity to advocate on behalf of Child's legal interests. *See T.M.L.M.*, 184 A.3d at 591 (ordering that trial court shall conduct a new hearing only if it serves the "substantive purpose" of providing the child with the opportunity to advance his legal interests through new counsel).

Decree vacated without prejudice to permit the orphans' court to re-enter the original decree if a new termination hearing is not required. Case

remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 09/18/2018